**Angelo NESBITT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–96–147 CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Dec. 4, 1997.

Decided Jan. 14, 1998.

Tom Brown, Livingston, for appellant.

Gina M. DeBottis, Special Prosecution Unit, Huntsville, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

A jury convicted Angelo Nesbitt of murdering a fellow prison inmate, found the indictment's enhancement allegations to be true and assessed punishment at confinement for forty-eight years in the Texas Department of Criminal Justice, Institutional Division. The judge ordered the sentence to be served consecutively to the seventy-five year sentence Nesbitt was already serving for aggravated robbery. His brief presents five points of error.

Points of error one through four challenge the sufficiency of the evidence to support the verdict, as charged to the jury:

### Ground of Error No. 1

The evidence is legally insufficient to sustain the jury's verdict of guilty of murder because there is no evidence that Ap-

pellant committed any of the specific acts clearly dangerous to human life.

### Ground of Error No. 2

The jury finding that Appellant committed any of the specific acts clearly dangerous to human life is against the great weight and preponderance of the evidence.

### Ground of Error No. 3

The evidence is legally insufficient to sustain the jury's verdict of guilty of murder because there is no evidence that Appellant committed an aggravated assault which is an essential element of the underlying felony predicate of the murder charge.

### Ground of Error No. 4

The jury finding that Appellant committed an aggravated assault, which is an essential element of the underlying felony predicate of the murder charge, is against the great weight and preponderance of the evidence.

Nesbitt argues the application paragraph of the jury charge did not include language incorporating the abstract definition providing the law of culpability as a party, so that the jury was authorized to convict only if the evidence established Nesbitt personally committed the act clearly dangerous to human life, by kicking or stomping Payne, and that Nesbitt personally caused serious bodily injury to Payne. At oral argument, Appellate counsel conceded the authority relied upon in support of his argument has been overruled by the Texas Court of Criminal Appeals.

■■■ *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997), held the sufficiency of the evidence is to be weighed by a hypothetically correct jury charge. In overruling *Boozer v. State,* 717 S.W.2d 608 (Tex.Crim. App.1984), and *Benson v. State,* 661 S.W.2d 708 (Tex.Crim.App.1982)(op. on reh'g), the Court of Criminal Appeals overruled a long line of caselaw which measured the sufficiency of the evidence by the indictment and the jury charge, particularly the application paragraph of the charge. This now defunct

law includes the cases relied upon by appellant: *Plata v. State,* 926 S.W.2d 300 (Tex. Crim.App.1996); *Walker v. State,* 823 S.W.2d 247 (Tex.Crim.App.1991); *Jones v. State,* 815 S.W.2d 667 (Tex.Crim.App.1991); and *Garrett v. State,* 749 S.W.2d 784 (Tex.Crim.App. 1986). Today, we measure the sufficiency of the evidence against a hypothetically correct charge which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried .... regardless of the specific wording of the jury charge actually given." *Malik,* 953 S.W.2d at 240. "[A]cquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.*

Nesbitt has not supplied us with a reason why *Malik* should not apply to factual sufficiency reviews as well as to reviews of the legal sufficiency of the evidence, and we perceive no reason for excluding the evidence of the actions of other parties to the offense in our assessment of the factual sufficiency of the evidence that Nesbitt murdered Payne while in the commission of the felony offense of organized criminal activity.

■■ The indictment charged Nesbitt under the felony murder provision of the Penal Code. Act of June 14, 1973, 63rd Leg., R.S., ch. 426, § 1, sec. 19.02(a)(3), 1973 Tex. Gen. Laws 1123 (amended 1993)(current version at TEX. PEN.CODE ANN. § 19.02(b)(3) (Vernon 1994)) [1]. The underlying felony is engaging in organized criminal activity. Act of June 18, 1993, 73rd Leg., R.S., ch. 761, § 3, sec. 71.02(a)(1), 1993 Tex. Gen. Laws 2967 (amended 1994, 1995, 1997)(current version at TEX. PEN.CODE ANN. § 71.02(a)(1) (Vernon Supp.1998)). The underlying criminal activity was the aggravated assault of Randy Payne. Act of June 5, 1991, 72nd Leg., R.S., ch. 334, 1991 Tex. Gen. Laws 1380, 1381 (amended 1993) (current version at TEX. PEN. CODE ANN. § 22.02 (Vernon 1994)).

1. The offense preceded the effective date of the   amendment.

Keith Block testified that when a new inmate, especially a white inmate or anyone who was either small or noticeably frightened, arrives in close custody at the Terrell Unit, he must either accept the protection of a stronger inmate in return for sexual favors or commissary privileges, or fight other inmates until his ability to defend himself was recognized by the other inmates. According to Block, sometimes an inmate is challenged to fight a succession of combatants, and sometimes a group attacks simultaneously. On August 5, 1994, Angelo Nesbitt and another inmate, Malcolm Moffett, approached Randy Payne and asked him if he was going to "ride" or "pay protection." Nesbitt insisted Payne would have to "ride" with someone. Block knew they were going to attack Payne, because that is "what happens when you ask the individual to ride and he rejects." They told Payne to go about his business, but between themselves continued to discuss who was going to "whore check" Payne, that is, force him to comply with their demands. They called Payne back over, telling him to go upstairs for hot water for coffee. They followed Payne into the shower and attacked him there, beating Payne with their fists and feet. Then two other inmates, Richardson and Hodges, joined the attack, forcing Payne into a cell and beating him there. Payne made his way down to the second floor shower, followed by his attackers. Hispanic inmates approached from the other side of the dayroom and attacked Payne. One of them said, "We are going to show you blacks how to do some whore checking."

Bradley Phillips related much of the same series of events as Block. According to Phillips, Nesbitt and the other inmates beat Payne down to the ground and stomped on him while Payne lay curled in a fetal position. The attacks continued as Payne made his way to the bottom floor. At least half an hour after the attacks began, someone arrived from the infirmary and removed Payne, who died from a closed-head injury caused by blunt trauma. Other inmates testified to much of the same facts as Block and Phillips; their testimony is consistent with that which we have already discussed. The State produced evidence that Nesbitt instigated and actively participated in a series of assaults

for the express purpose of extorting property or services from the victim. The beatings inflicted upon Payne were so severe as to be clearly dangerous to human life, as Payne's eventual demise illustrates. Viewing the evidence in the light most favorable to the prosecution, we find the jury could have found Nesbitt, acting alone or as a party, committed each and every element of the offense beyond a reasonable doubt, even in the absence of evidence Nesbitt personally executed the fatal blow. The evidence is legally sufficient to support the judgment. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Viewing all of the evidence equally, without the prism of "in the light most favorable to the prosecution," we find the evidence does not overwhelmingly preponderate against guilt; therefore, the evidence to convict is factually sufficient to support the verdict, as well. *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim.App.1996). Points of error one through four are overruled.

■ The final point of error contends: "The trial court reversibly erred in admitting over Appellant's objections hearsay testimony about conversations prior to the alleged offense." The State asked Bradley Phillips if he participated in any inmate discussions about Randy Payne. Over Nesbitt's hearsay objections, Phillips testified about two conversations. First Randy Payne approached Phillips and another white inmate, Lonnie Carney, who asked him what was going on. Randy Payne replied "Man, it's only my life." Randy Payne informed the others that he had been threatened by other inmates, and expressed an intention to fight rather than pay for protection.

■ In relating this first conversation, Phillips testified to matters within his personal knowledge. Elsewhere in the record, we find Keith Block testified, without objection, that he witnessed an actual verbal confrontation between Nesbitt, Moffett, and Payne. Nesbitt and Moffett asked Payne if he was going to pay for protection. Payne refused. From that exchange, Block knew Nesbitt and Moffett were going to attack Payne. Inadmissible evidence is harmless if

**956**

other evidence admitted at trial without objection proves the same fact that the inadmissible evidence sought to prove. *Brown v. State,* 757 S.W.2d 739, 741 (Tex.Crim.App. 1988); *Thomas v. State,* 621 S.W.2d 158, 164 (Tex.Crim.App.1980). The fact that Nesbitt threatened Payne in an effort to make Payne accept Nesbitt's protection is established elsewhere in the record; therefore, even if improperly admitted, the conversation between Payne, Phillips, and Carney cannot be reversible error.

■ Phillips went on to testify, over another hearsay objection, that Nesbitt was standing against the far wall of the recreation yard while they were talking to Payne. According to Phillips, Nesbitt "said something in our general direction." Carney stood up and said "What's up," then met Nesbitt in the middle of the yard. When Carney returned, he told Phillips that Nesbitt had warned Carney not to try to protect Payne, and that Carney had told Nesbitt not to fight Payne in a group attack. Phillips witnessed part of the discussion, but from the record we cannot distinguish which knowledge he acquired firsthand and which was only related to Phillips by Carney after the fact. If the statement offered is Carney's statement to Phillips, it is not the admission of a party opponent, but is hearsay.

■ Assuming the evidence was erroneously admitted, we find the error to be harmless. Any error, other than constitutional error, which does not affect substantial rights shall be disregarded. Tex.R.App. P. 44.2(b); Tex.R.Crim. Evid. 103(a). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997)(citing *Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed.2d 1557 (1946)). As Appellant's brief contends, the testimony demonstrates "a certain premeditation by Appellant to engage in the assaultive conduct," evidence relevant to whether Nesbitt participated in a combination to commit aggravated assault against Randy Payne. However, Nesbitt's threats to Payne were also established through Block's testimony. Eyewitnesses testified Nesbitt

personally participated in the series of assaults against Payne. The Carney/Nesbitt conversation was an additional source of the same information admitted elsewhere during the trial. We find that the complained of evidence did not have a substantial or injurious influence on the jury's verdict. Point of error five is overruled.

We affirm the judgment and sentence of the trial court.

AFFIRMED.