IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 561-02






ALFONZO GONZALEZ, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and
Meyers, Price, and Cochran, JJ., joined. Hervey, J., filed a dissenting
opinion, in which Keasler and Johnson, JJ., joined. Womack, J., dissented
without opinion. 


O P I N I O N 



The Issue

 Ralph Gonzalez, appellant's counsel of choice was disqualified as counsel on the State's
pretrial motion. The State argued that he would be a witness necessary to establish an essential
fact on behalf of appellant and that the dual roles of advocate and witness would taint the jury,
resulting in actual prejudice to the State. After conviction, appellant appealed, claiming among
other things, that the trial court's ruling dismissing his attorney violated his Sixth Amendment
right to counsel of his choice. 

 We granted review to address under what circumstances the possibility of prejudice to
the State's case trumps the defendant's Sixth Amendment right to retained counsel of his
choice. 

The Relevant Facts

 Appellant and several co-defendants were indicted for engaging in organized criminal
activity, to wit, theft. See Tex. Penal Code Ann. §71.02 (Vernon 1994 & Supp. 2001). The group stole more than $200,000 in an insurance fraud scheme in which automobile
accidents were staged and insurance companies were billed for medical treatment of persons
purportedly injured in the staged accidents. Appellant was a licensed physician purporting to
treat claimants involved in the staged car accidents. Percy Gonzalez, one of the participants
in the conspiracy, was the State's key witness against appellant. He had first participated in a
staged wreck after which he was attended by appellant. Percy later accepted a job at appellant's
clinic, generating phony medical narratives and medical bills under appellant's supervision. 
Appellant had discussed with Percy the financial arrangements he had with the co-defendant
who was in charge of recruiting and paying the numerous individuals who staged the auto
accidents and posed as injured passengers. 

 After appellant and Percy were indicted, Percy had several telephone conversations and
at least two meetings with Ralph Gonzalez, appellant's attorney. During these encounters, it
was agreed that appellant would pay Percy $10,000. The reason for the payment was in dispute. 
The transfer of the first payment of $3,000 was completed. Appellant was present during at
least one of the meetings, and Marco Vargas, Percy's friend, was present during at least one
meeting and was involved in the transfer of the $3,000. Appellant refused to pay the remaining
$7,000.

 The State moved to disqualify attorney Gonzalez as appellant's counsel under
disciplinary rule 3.08 (1), because he had personal knowledge bearing directly on the guilt or
innocence of his client and the credibility of the State's key witness and was therefore a
potential witness whose credibility would be at issue regardless of whether he took the stand. 

 At the hearing on the motion to disqualify, Percy claimed the payment was an attempt
to buy testimony favorable to appellant; attorney Gonzalez claimed the money was paid initially
out of appellant's moral obligation to help Percy, appellant's employee, pay for an attorney,
but that Percy then attempted to extort the money from appellant, threatening to testify
unfavorably regarding appellant if appellant did not pay the $10,000. To back this up, attorney
Gonzalez offered a transcript of one of the telephone conversations between himself and Percy
that he had recorded. He had recorded some, but not all, of the telephone conversations he had
with Percy and none of the in-person meetings. He did not introduce the transcript of the
recording or any of the recordings into evidence and had refused to produce them to the
prosecution. 

 Attorney Gonzalez argued, both in his response to the motion to disqualify and at the
disqualification hearing, that he should not be disqualified from representing appellant. First,
he did not believe that he would be a necessary witness in the case. Second, appellant would
suffer a substantial hardship from his disqualification. He based his first argument on the
existence of the taped conversations and his ability to impeach Percy's testimony regarding
the untaped meetings through rigorous cross-examination. At the hearing, he also focused on
his contentions that his testimony would not be adverse or prejudicial to his client, and that
whether he would testify was purely speculative.

 At the hearing on the motion to disqualify defense counsel, the trial court heard
testimony from Percy Gonzalez, Marco Vargas, and attorney Gonzalez, among others, and
argument from the State and attorney Gonzalez. The witnesses's testimony focused mainly on
detailing what transpired at the meetings and in the conversations attorney Gonzalez had with
Percy and what the witnesses believed the basis was for agreeing to pay Percy. 

 While cross-examining Percy Gonzalez, attorney Gonzalez at one point made the
comment to the judge that Percy's answer was "absolutely correct." While cross-examining
Vargas, after Vargas testified he had first met attorney Gonzalez at the Red Lobster, attorney
Gonzalez asked "Would it surprise you that I have never met with you or anybody at Red
Lobster?" 

 The trial court granted the State's motion to disqualify defense counsel. 

 Thereafter, a joint trial took place and appellant was convicted. (2) After appellant's
motion for new trial was denied, he appealed, raising among his points of error the violation
of his Sixth Amendment right based on the trial court's pre-trial ruling disqualifying his
counsel of choice. 

 The court of appeals affirmed appellant's conviction, finding the trial court did not
abuse its discretion in determining that dismissal was justified. (3) The court of appeals
concluded the record supported the finding that, there existed, at the time of disqualification,
a very real probability that attorney Gonzalez would be called upon to testify on a hotly
contested, very controversial issue that was of paramount importance to the defense, thus
making his credibility an issue. Further, the court of appeals found the State had sufficiently
demonstrated attorney Gonzalez's continued representation, in light of such testimony, would
cause actual prejudice to the prosecution. The Law

 The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in
a criminal proceeding the right to have assistance of counsel. (4) The right to assistance of
counsel contemplates the defendant's right to obtain assistance from counsel of the
defendant's choosing. (5) However, the defendant's right to counsel of choice is not absolute. (6) 
A defendant has no right to an advocate who is not a member of the bar, an attorney he cannot
afford or who declines to represent him, or an attorney who has a previous or ongoing
relationship with an opposing party. (7) Additionally, while there is a strong presumption in favor
of a defendant's right to retain counsel of choice, this presumption may be overridden by other
important considerations relating to the integrity of the judicial process and the fair and
orderly administration of justice. (8) However, when a trial court unreasonably or arbitrarily
interferes with the defendant's right to choose counsel, its actions rise to the level of a
constitutional violation. (9) Therefore, courts must exercise caution in disqualifying defense
attorneys, especially if less serious means would adequately protect the government's
interests. (10) 

 In moving to disqualify appellant's counsel of choice, the government bears a heavy
burden of establishing that disqualification is justified. (11) 

 Counsel may be disqualified under the disciplinary rules when the opposing party can
demonstrate actual prejudice resulting from opposing counsel's service in the dual role of
advocate-witness. (12) Allegations of one or more violations of the disciplinary rules or evidence
showing only a possible future violation are not sufficient. (13) In determining whether counsel
should be disqualified because counsel is a potential witness, Texas courts use rule 3.08 of the
Texas disciplinary rules of professional conduct as a guideline. (14) The rule does not present the
disqualification standard, but does provide considerations relevant to the determination. (15)

 The comments following the rule recognize that rule 3.08 sets out a disciplinary
standard and is not well suited to use as a standard for procedural disqualification but can
provide guidance in those procedural disqualification disputes where the party seeking
disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's
service in the dual roles. (16) The party seeking disqualification, however, cannot invite the
necessary actual prejudice by unnecessarily calling the opposing counsel as a witness. (17)

Analysis

 The arguments appellant urges in support of his three grounds for review can be broken
down into five assertions of error on the part of the court of appeals. (1) The court of appeals
applied the abuse of discretion standard incorrectly, because the record demonstrates the trial
court did not correctly apply the law. (2) The court of appeals erred by not applying the same
actual prejudice requirement to the State as was applied to the defendant in House. (3) The
court of appeals erred in basing its decision on the unsworn-witness rule, which is not yet
adopted in Texas. (4) The court of appeals erred by finding that speculation, regarding both
whether counsel was a necessary witness and whether performing such a dual role in this
instance would result in actual prejudice to the State, was sufficient to support the trial court's
ruling. (5) Finally, the court of appeals erred in not considering whether the trial court had
considered less drastic means to protect the State's interests. 

 First, appellant contends the court of appeals applied the abuse of discretion standard
incorrectly. Appellant argues that both the State's failure to allege or show actual prejudice
and comments made by the judge at the hearing regarding his interpretation of the disciplinary
rule, demonstrate that the trial court did not consider whether the State had shown that actual
prejudice would result from attorney Gonzalez's continued representation of appellant.

 The State's motion alleged that the jury's perspective would be tainted by attorney
Gonzalez's continued representation and provided several reasons in support of that fact, all
regarding attorney Gonzalez's personal knowledge of a contested matter bearing directly on
appellant's guilt that the State intended to introduce at trial. The State's motion also suggested
that mistrial would result due to the taint. Therefore, the State's motion sufficiently alleged
actual prejudice flowing from the alleged violation of disciplinary rules. 

 In support of his argument that the trial court did not correctly analyze or apply the law,
appellant points to one specific statement the judge made during the disqualification hearing. 
The judge stated, "As I read the rule, a lawyer cannot just act as a lawyer for a person if he is
going to be a witness." However, the judge made other statements during the hearing regarding
his understanding of the law. The judge also stated, "[T]he lawyer is disqualified to act as a
lawyer when he is or may be a witness necessary to establish an essential fact on behalf of the
lawyer's client unless certain things are met, and that's the only fact issue before the Court
today. ... the rule is not written such, that you could without any restraints whatsoever be a
witness and still represent your client." After attorney Gonzalez said his interpretation of the
rule was that "I have to have something substantially detrimental to [my client] for me to be
able to prove an essential element to find my client guilty," the judge stated, "I do not
understand it to be that way." 

 Although none of these statements discuss the need for the State to demonstrate actual
prejudice, neither do they conclusively demonstrate that the trial court did not consider actual
prejudice. Although the trial court did not make an explicit finding that the State had
demonstrated actual prejudice would occur from attorney Gonzalez's continued representation,
we must defer to the implied findings that the record supports. (18) Also, we uphold the trial
court's ruling if it is correct on any theory of the law and as long as the trial court's ruling is
within the zone of reasonable disagreement. (19) Therefore, the court of appeals did not err in
failing to find the trial court abused its discretion by failing to consider whether actual
prejudice would result from the continued representation when the record supports a finding
that the trial court did consider actual prejudice. Appellant's first contention is overruled. 

 Second, appellant contends that the court of appeals erred in failing to apply the same
burden of proving actual, not just speculative, prejudice to the State as was applied to the
defendant in House. (20) The court of appeals, in its statement of law, cited House for the
proposition that a party moving to disqualify opposing counsel for an alleged disciplinary rule
violation must demonstrate actual harm, (21) and the State does not contest that actual harm is
required. Therefore, the crux of appellant's argument is that the court of appeals did not
correctly apply the requirement of actual prejudice in its review of the trial court's ruling. 

 It is well settled that a party seeking to disqualify the opponent's attorney for violation
of an ethical rule must demonstrate that such violation will result in actual prejudice to the
moving party. However, our case law is meager concerning what it means for the State to
demonstrate actual prejudice arising from a defense counsel's violation of Rule 3.08 or what
it means for a party to demonstrate actual prejudice when a pretrial motion to disqualify is
involved. There is only one other case in this state's body of criminal law that addresses a
factual scenario where the prosecution moved to have the defense attorney disqualified. (22) 
There are less than a handful of cases dealing with pretrial motions to disqualify. 

 In House, this Court said that to obtain relief from the opposing party's alleged ethical
violation, the defendant must show "the alleged disciplinary rule violations by opposing
counsel deprived him of a fair trial or otherwise affected his substantial rights." (23) Appellant
contends substituting the word "State" for "defendant" would yield the correct definition
describing when the State has shown actual prejudice. However, that definition of actual
prejudice does not easily apply to the State. A defendant's right to a fair trial, or due process,
emanates from the Fourteenth Amendment of the United States Constitution regarding
individual rights. Furthermore, it is not clear what the State would be required to demonstrate
to show that its "substantial rights"would be affected by an opposing attorney's alleged ethical
violation. Similar "substantial rights" language is used in Rule 44.2(b) of the Texas Rules of
Appellate Procedure concerning harmless error. In that harmless error context, a reviewing
court must determine whether the error had a substantial influence on the proceeding itself or
whether it had a substantial and injurious effect or influence on the jury's verdict. (24) Assuming,
without deciding, that this is the standard the State must meet to show that disqualification of
opposing counsel is justified, we find that the court of appeals did not err in concluding that
the State met its burden in this case.

 If counsel were to have testified, the State would have been prejudiced not only by the
undue weight jurors might have attach to counsel's testimony, but also by the confusion that
would most likely have resulted during argument regarding whether counsel was summarizing
evidence or further testifying as to personal knowledge. However, even if attorney Gonzalez
did not testify, but referred to his own recollection of the events through cross-examination,
the State would have been prejudiced by the implication to the jury that his questions
represented the truth based on his personal knowledge of what had occurred. The State would
have been prejudiced by the inability to clarify counsel's testimony and impeach counsel's
credibility. Counsel's personal knowledge regarding the conversations with the State's witness
would have affected the jury's perspective, not only on the witness tampering issue, but also
on the credibility of the State's key witness against appellant regarding the facts of the charged
crime. Therefore, the confusion resulting from counsel's dual roles would most likely have
substantially affected the jury's verdict. If the confusion were such that it would have
prevented an impartial verdict from being reached, it could have resulted in a mistrial, as the
State argued. (25) 

 However, even if the State had not met its burden, the trial court has an independent duty
to ensure criminal defendants receive a fair trial that does not contravene the Sixth
Amendment's central aim of providing effective assistance of counsel once issues are raised
that indicate a concern. (26) Counsel's dual role may also have prejudiced the defendant,
especially if the State effectively impeached attorney Gonzalez on the stand. At the hearing
for disqualification, the State discussed some evidence it intended to introduce, if necessary,
to impeach counsel's credibility. For all these reasons, we find the court of appeals did not
incorrectly analyze the actual prejudice requirement in making its determination. Appellant's
second contention is overruled. 

 Third, appellant contends the court of appeals erred in relying either on the unsworn
witness rule, not yet recognized in Texas, or on the State's ability to call counsel as a witness,
in finding the record supported the trial court's ruling that he was a necessary witness to
establish an essential fact on behalf of his client. He further argues that the court of appeals
erred in so concluding without explaining why it would be necessary for the State to call
counsel as a witness and without explaining what essential fact his testimony could have
established, especially when his testimony was not substantially adverse to his client.

 The court of appeals reasoned that, regardless of whether defense counsel took the
witness stand, actual prejudice would result to the State when the State introduced evidence of
witness tampering if defense counsel were to continue representing appellant. If he did not
testify, the fact that his personal knowledge of the disputed events would be evident to the jury
would likely cause the jury to interpret his questions or summation as testimony conveying his
own version of the facts, and such summation would be unsworn and would not be subject to
cross-examination. If he did testify, although his statements on the stand would be sworn and
the State would be able to cross-examine and possibly impeach him while he was on the stand,
when he resumed his argument as counsel, there would still be confusion as to whether to
interpret his statements as evidence or as an analysis of the evidence. 

 We have recognized that Rule 3.08 does not provide the standard for disqualification,
but merely provides the trial court some guidance regarding considerations relevant to the
determination of when disqualification is justified. Comment 4 to Rule 3.08 indicates that
where the testimony the defendant's attorney may be called upon to give is not substantially
adverse to the defendant, the principle concern over allowing a lawyer to serve as both an
advocate and witness for a client is the possible confusion that those dual roles could create
for the finder of fact, especially where the lawyer's testimony concerns a controversial or
contested matter because the dual role can unfairly prejudice the opposing party. 

 In Peng, (27) a decision from the United States Court of Appeals for the Second Circuit,
defense counsel elicited testimony from the government's witness regarding post-arrest
contacts with defendant and defendant's counsel, which plainly showed counsel to be a
participant in an event relating to the alleged fraud, and which revealed the substance of the
conversations was in dispute. This irreversibly injected counsel's credibility as an issue in the
trial, spurring the trial judge to intervene and question defense attorney and witness regarding
the substance of the contacts. The trial court, after considering several alternatives,
determined that disqualification of the defendant's attorney was required and that there was a
manifest necessity to declare a mistrial. One of the alternatives counsel suggested was the
possibility of having another lawyer who was in attendance at the meeting take the stand to
rebut the State witness's testimony. (28) The court determined that even if someone other than
counsel testified to the conversation, counsel would still be placed before the jury in the dual
roles of both advocate and unsworn witness, with personal knowledge of disputed facts. (29) The
court concluded that because counsel's disqualification would not work such a substantial
hardship on the defendant as to justify counsel's continuation, the risk of confusing the jury
regarding counsel's dual roles as advocate and witness if counsel were to remain outweighed
the defendant's sixth amendment interest in choice of counsel. (30) The court of appeals found
the district court's fear that the jury would be unacceptably affected by counsel's double role
as advocate and unsworn witness quite understandable, the disqualification an appropriate
exercise of discretion, and the mistrial proper, and concluded that the retrial was not barred
by double jeopardy. (31) 

 In overturning the decision of the court of appeals in Harrison and finding retrial after
mistrial was barred by double jeopardy, this Court distinguished Peng on the facts, but we did
not reject the reasoning of the Second Circuit's unsworn witness rule. (32) In Harrison, the
defendant was accused of hindering apprehension. In that case, defense counsel, suggested on
cross-examination that the police officer who was subdued was wrong about having sustained
a black-eye from another person in the altercation, by suggesting counsel had seen the officer
and had not seen a black-eye. (33) This Court found that defense counsel's cross-examination of
State's witness did not irreversibly inject counsel's credibility as an issue in the trial because
the issue about which counsel suggested he had personal knowledge was merely tangential to
the allegations lodged against his client and if an issue, only a minor one because counsel did
not pursue that theory. (34) This Court also found that disqualification was not required,
reasoning that although defense counsel may have made himself a potential witness, the matter
of credibility presented by the questioning was not important to the case or any issue
concerning the offense, and did not impeach the credibility of the State's witness to any great
degree, if at all, on a material issue. (35)

 In this case, the record shows that the State intended to introduce evidence about which
defense counsel had personal knowledge. The fact that defense counsel had personal
knowledge would become obvious through the testimony of the State's witness. This evidence,
an allegation that defendant, through his attorney, attempted to bribe a witness for favorable
testimony, was not merely tangential to the case or to defendant's guilt, but would support an
inference that such conduct demonstrated defendant's consciousness of guilt for the crime
charged. 

 Defense counsel, testifying at the disqualification hearing that he knew from his
personal knowledge that the allegations were false, proposed to impeach the State's witness
with tape recordings or transcripts of several, but not all, of the conversations he had with the
State's witness involving the exchange of money and with "forceful cross-examination." From
defense counsel's attempt to cross-examine the State's witness at the disqualification hearing,
it is apparent that defense counsel would face difficulty in such a cross-examination and that
through such cross examination it would certainly become apparent that counsel had personal
knowledge of the events which conflicted with the witness's testimony. Thus, even without
testifying, the jury might well have interpreted his questions or summation as testimony
conveying, not only the best possible scenario of the events for his client, but his own
recollection of the events and, not being subject to cross-examination or explicit
impeachment, would create more confusion for the jury in attempting to discern the truth than
if counsel appeared as a sworn witness. 

 Because the purpose of Rule 3.08 is to address the possible confusion that can arise for
the trier of fact when counsel's own credibility is called into question, the court of appeals did
not err in at least alternatively relying on the prejudice that would result from defense
counsel's forceful cross-examination and failure to take the stand in finding that the trial court
did not abuse its discretion in finding that disqualification was justified. 

 The court of appeals also recognized that defense counsel's decision to not testify
would not determine whether defense counsel would testify, because the State could call
counsel as a witness. This suggests that the court of appeals found that the record supported
the conclusion that it would be necessary for the State to call attorney Gonzalez as a witness
if he did not put himself on the stand. When the record supports the court's conclusions,
neither the trial court nor the court of appeals is under any obligation to explain why it would
be necessary for the State to call counsel as a witness or what essential fact defense counsel's
testimony would establish. 

 It is not unreasonable to conclude that it would have been necessary for the State to call
attorney Gonzalez as a witness. Because it would have been evident that attorney Gonzalez was
involved in the conversations about which Percy testified, questions by attorney Gonzalez
suggesting facts contrary to Percy's testimony about the content of the conversations might
have been misunderstood by the jury to be attorney Gonzalez's testimony as to what occurred
at those meetings. Attorney Gonzalez was the only witness the State could have called to
clarify for the jury what attorney Gonzalez would testify under oath had occurred during those
conversations. Attorney Gonzalez's sworn testimony would have either been adverse to his
client or, as he claimed it would be during the hearing, adverse to the State, tending to
establishing on behalf of appellant that appellant did not attempt to bribe the State's witness. 
If attorney Gonzalez's testimony was adverse to the State, the State would have needed to
impeach his credibility in order to rehabilitate the credibility of the State's witness. Further,
because the State could not have compelled appellant to testify as to what occurred at the
meetings with the State's witness, attorney Gonzalez was the only witness to the conversation
the State could have called to rehabilitate its witness after attorney Gonzalez cross-examined
Percy about the conversations. The court of appeals erred neither by considering the confusion
caused by an unsworn witness acting as advocate nor by considering the necessity of the State
to call such an advocate as a sworn witness. Neither did the court err by not explaining what
it considered the essential fact to be or why it considered the State's calling defense counsel
as witness to be necessary. Appellant's third contention is overruled.

 Fourth, appellant contends that the court of appeals erred in finding that the trial court's
ruling was reasonable and not arbitrary when the ruling was impermissibly based on mere
speculation regarding both whether counsel was a necessary witness and whether performing
such a dual role in this instance would result in actual prejudice to the State. 

 The court of appeals recognized in its legal framework that a court should not reject a
defendant's chosen counsel on "[u]nsupported or dubious speculation." (36) However, when a
judge makes a ruling on disqualification at a pretrial hearing, some speculation is involved. The
Supreme Court of the United States recognized this in Wheat in relation to conflicts of
interest leading to disqualification. The Supreme Court held that the presumption in favor of
petitioner's counsel of choice may be overcome not only by a demonstration of actual conflict
but by a showing of serious potential for conflict. (37) While comment 10 to Rule 3.08 states that
the rule provides guidance where the movant can demonstrate actual prejudice to itself,
comment 7 implies approval of pretrial procedural disqualification motions, suggesting that
the movant should act at the earliest opportunity to avoid being subjected to the actual
prejudice resulting from the opponent's acting in the dual roles and to prevent creating a
situation in which the opponent's client would experience substantial hardship were his counsel
disqualified. Some speculation will be inherent in such pretrial hearings. The trial court's
speculation, however, cannot be unsupported or dubious. 

 The court of appeals concluded that, at the time the judge made the disqualification
ruling, the allegation of witness tampering was still a viable part of the case and "a very real
probability existed that attorney Gonzalez would be called upon to testify concerning the
alleged bribery of a key witness." (38) Both the appellant and the court of appeals' dissent 
disagree with the trial court's ruling and the court of appeals' majority analysis of the
probabilities involved. The court of appeals' dissent concluded that the probabilities were such 
that the issue would not arise at trial and therefore neither Percy nor attorney Gonzalez would
have been testifying regarding the bribery/extortion issue. This conclusion was based on both
the State's knowledge that attorney Gonzalez had tapes of his conversations with Percy with
which to impeach Percy and the dissent's opinion that appellant had nothing to gain by raising
the issue. Appellant makes essentially the same argument, citing the portion of one of the tape
transcripts that attorney Gonzalez read into the record as illustrating the quality and force of
the tapes' impeaching evidence. Appellant also argues that the State did not object at the
hearing that the transcript of the taped conversation was not accurate or that the taped
conversation was not authentic. 

 Whether the dissent's conclusion is reasonable, based on the evidence before the trial
court at the time of the disqualification hearing, is irrelevant. The court of appeals found that
the record supported the trial court's conclusion that there was a real possibility that counsel
would be called as a witness. Besides the implication, based on the co-defendant's motion to
exclude the evidence eight months later, that the State did intend to introduce the bribery
evidence at trial, the State suggested that the admissibility of the tapes would be contested at
trial, there were conversations between Percy and counsel relevant to the bribery issue that
were not tape recorded, and the portion of the transcript that counsel read into the record to
illustrate the quality and force of the tapes' impeaching evidence contained an accusation by
the State's witness that counsel was paying for his testimony and a self serving statement made
by the attorney, with knowledge that the conversation was being tape recorded and that
prosecution in the relevant case was ongoing, denying the accusation. The court of appeals did
not err in finding the trial court's conclusion that there was a real possibility that attorney
Gonzalez would have to testify was within the zone of reasonable disagreement. Appellant's
fourth contention is overruled. 

 Fifth, appellant contends the court of appeals erred in not determining whether the trial
court had considered less drastic means to protect the State's interests. The court of appeals
did address one of the alternatives appellant suggested in his brief, the same argument appellant
made to the trial court at the hearing on the motion to disqualify. Appellant first argues that
the State's interests would have been protected if defense counsel had been held to his promise
not to put himself on the stand to testify and had been allowed to rebut Percy Gonzalez's
testimony by introducing the tapes or transcripts of the conversations he had recorded and by
cross-examining Percy regarding the untaped conversations. 

 As long as the basis for the disqualification is adequately shown by the record, the trial
judge need not expressly state its consideration of less drastic alternatives in the record. (39) The
court of appeals explained why the record showed appellant's first suggestion would not
adequately protect the State's interest. 

 Appellant also argues that the trial court should have considered the less drastic
alternative of excluding the evidence of the witness tampering/extortion to protect the State's
interests. Both appellant and the court of appeals' dissent point to the trial court's eventual
exclusion of the evidence to support the proposition that this was a viable alternative the trial
court should have considered. However, neither suggest on what grounds such exclusion would
have been proper at the time of the disqualification hearing. 

 Although the trial court did eventually exclude the evidence, it was excluded because
the trial court found, after the trial court determined the co-defendants would be tried jointly,
, that the evidence would be unduly prejudicial to the co-defendants. There is no suggestion
that the evidence of bribery/extortion would have been substantially more prejudicial than
probative to appellant. Nor did appellant make such a motion at the disqualification hearing. 

 Appellant seems to suggest that exclusion would have been appropriate solely to protect
the defendant's right to counsel of choice. However, the defendant's right to counsel of choice
"cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts
or to interfere with the fair administration of justice." (40) This has been held to mean the
defendant's right to a particular counsel should not be permitted to impose artificial
disadvantages upon the government by truncating the State's evidence. (41) The State intended
to introduce the bribery evidence as evidence of appellant's consciousness of guilt. While
excluding such evidence did not render the State's case against appellant impotent, as
evidenced by his conviction, it may have been the best evidence the State had to demonstrate
appellant's intent. As we fail to find any proper basis on which the trial court could have
excluded the evidence based on the information before the trial court at the time of the hearing,
we cannot find that the court of appeals erred in not finding that the trial court abused its
discretion by not excluding the evidence of bribery. 

 Thus we do not find that, on these grounds, the court of appeals erred in finding that the
trial court did not abuse its discretion in disqualifying counsel. Appellant's final contention
is overruled. 

 We affirm the judgment of the court of appeals. 


PUBLISH

DELIVERED OCTOBER 8, 2003.
1. Tex. Disciplinary R. Prof'l Conduct 3.08. 
2. On November 8, 1996, over six months after the trial court granted the State's
motion to dismiss defense counsel, the trial court ruled that a number of co-defendants,
including appellant, would be tried jointly. Three months after that, the trial court granted 
one of these co-defendant's motion to suppress evidence on the allegations of bribery and
extortion which were the basis upon which attorney Gonzalez was disqualified. The court
granted the motion because, while relevant, the probative value of the evidence was
substantially outweighed by its prejudicial effect to the co-defendants. 
3. Gonzalez v. State, 63 S.W.3d 865 (Tex. App. Houston [14th] 2001).
4. See U.S. Const., 6th Amend.; Tex. Const., Art. I §10; Tex. Code Crim. Proc. Art. 1.05.
5. See Ex parte Prejean, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981); Powell v. Alabama,
287 U.S. 45, 53 (1932)(defendant should be afforded fair opportunity to secure counsel of his own
choice); Chandler v. Fretag, 348 U.S. 3, 9 (1954)(same); Glasser v. United States, 315 U.S. 60,
70 (1942)(same). 
6. Wheat v. United States, 486 U.S. 153, 159 (1988). 
7. Id. 
8. Id. at 158-60; Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). 
9. United States v. Collins, 920 F.2d 619, 625 (10th Cir. 1990). 
10. United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986). 
11. United States v. Washington, 797 F.2d 1461, 1465 (9th Cir. 1986). 
12. House v. State, 947 S.W.2d 251 (Tex. Crim. App. 1997); Brown v. State, 921 S.W.2d
227 (Tex. Crim. App. 1996); Harrison v. State, 788 S.W.2d 18 (Tex. Crim. App. 1990). 
13. In the Interest of A.M., 974 S.W.2d 857, 864 (Tex. App. San Antonio 1998, no
pet.). 
14. Tex. Disciplinary R. Prof'l Conduct 3.08; House v. State, 947 S.W.2d at 252-253;
Anderson Producing Inc v. Koch Oil Co., 929 S.W.2d 416, 421 (Tex. 1996). 


 Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, provides in part:

 (a) A lawyer shall not accept or continue employment as an advocate before a
tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or
believes that the lawyer is or may be a witness necessary to establish an essential fact
on behalf of the lawyer's client, unless:

 (1) the testimony relates to an uncontested issue;

 (2) the testimony will relate solely to a matter of formality and there is no reason
to believe that substantial evidence will be offered in opposition to the testimony;

 (3) the testimony relates to the nature and value of legal services rendered in the
case; 

 (4) the lawyer is a party to the action and is appearing pro se; or

 (5) the lawyer has promptly notified opposing counsel that the lawyer expects
to testify in the matter and disqualification of the lawyer would work substantial
hardship on the client. 

 (b) A lawyer shall not continue as an advocate in a pending adjudicatory
proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony
that will be substantially adverse to the lawyer's client, unless the client consents after
full disclosure. 
15. Anderson Producing Inc., 929 S.W.2d at 421; House, 947 S.W.2d at 252 (citing comment
10 to rule, which states: "this rule may furnish some guidance").
16. Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 9 & 10.
17. Id. 
18. See Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). 
19. See Knox v. State, 934 S.W.2d 678 (Tex. Crim. App. 1996). 
20. House, 947 S.W.2d 251.
21. Gonzalez, 63 S.W.3d at 876.
22. Harrison, 788 S.W.2d 18 (finding prosecution after mistrial barred by double jeopardy
because mistrial was not manifestly necessary. The defense attorney did not inject his credibility as an
issue in the trial by indicating on cross-examination that he had personal knowledge of a tangential
issue.).
23. House, 947 S.W.2d at 253. 
24. See Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). 
25. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied 529 U.S. 1070
(2000).
26. Wheat v. United States, 486 U.S. 153, 161 (1988).
27. United States v. Peng, 766 F.2d 82, 84-87 (2nd Cir. 1985).
28. Id. at 84.
29. Id. at 85.
30. Id. 
31. Id. at 87.
32. Harrison, 788 S.W.2d at 22-23.
33. Id. at 20. 
34. Id. at 23-24.
35. Id. at 24. 
36. Gonzalez, 63 S.W.3d at 875, citing Wheat, 486 U.S. at 166(Marshall, J., dissenting).
37. Wheat, 486 U.S. at 163-64. 
38. Gonzalez, 63 S.W.3d at 880.
39. Harrison, 788 S.W.2d at 22. 
40. United States v. Cortellesso, 663 F.2d 361, 363 (1st Cir. 1981).
41. Id. (fact that evidence was available from other sources did not make it less necessary for the
State to call defendant's counsel when defendant's counsel's testimony was the best evidence and
failure to call defendant's counsel would encourage the fact finder to make improper inferences
regarding counsel's failure to testify.)